# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
No. 18-1419V

| | | |
|---|---|---|
| * * * * * * * * * * * * * * * * * * * * * * * * * * | * | |
| | * | |
| BRYSON LIBERTY, | * | **TO BE PUBLISHED** |
| | * | |
| Petitioner, | * | |
| | * | Special Master Katherine E. Oler |
| v. | * | |
| | * | Filed: August 21, 2020 |
| SECRETARY OF HEALTH AND | * | |
| HUMAN SERVICES, | * | Attorneys' Fees and Costs; Reasonable |
| | * | Basis |
| Respondent. | * | |
| | * | |
| * * * * * * * * * * * * * * * * * * * * * * * * * * | * | |

*Andrew Downing*, Van Cott & Talamante, PLLC, Phoenix, AZ, for Petitioner.
*Heather Pearlman*, U.S. Department of Justice, Washington, DC, for Respondent.

### DECISION ON FINAL ATTORNEYS' FEES AND COSTS[1]

On September 17, 2018, Bryson Liberty ("Mr. Liberty" or "Petitioner") filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. § 300aa-10, *et seq*.[2] (the "Vaccine Act" or "Program") alleging he suffered from an adverse reaction as a result of the pneumonia ("Prevnar 13") vaccination he received on December 13, 2015. Pet. at 1, ECF No. 1.

---

[1] This Decision will be posted on the United States Court of Federal Claims' website, in accordance with the E-Government Act of 2002, 44 U.S.C. § 3501 (2012). **This means the Decision will be available to anyone with access to the internet**. As provided in 42 U.S.C. § 300aa-12(d)(4)(B), however, the parties may object to the Decision's inclusion of certain kinds of confidential information. To do so, each party may, within 14 days, request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). Otherwise, this Decision will be available to the public in its present form. *Id.*

[2] The Vaccine Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755 (codified as amended at 42 U.S.C. §§ 300aa-10–34 (2012)) (hereinafter "Vaccine Act" or "the Act"). All subsequent references to sections of the Vaccine Act shall be to the pertinent subparagraph of 42 U.S.C. § 300aa.

For the reasons set forth below, I hereby **GRANT IN PART** Petitioner's application and award a total of $28,700.70 in attorneys' fees and costs.

## I.  Petitioner's Relevant Medical History

Prior to the allegedly causal vaccination on December 3, 2015, Petitioner had a history of hypercholesterolemia, mild cognitive impairment, hypertension, mild renal insufficiency, hearing loss, glaucoma, macular degeneration, and osteoarthritis.  Ex. 11 at 1; Ex. 12 at 10-11, 33, 44.  Petitioner also had surgical history including a parathyroidectomy in 2004, right knee replacement surgery in 2006, left cataract eye surgery in 2006, and right eye laser surgery in 2014.  Ex. 11 at 1; Ex. 12 at 10-11, 33, 44.

On December 3, 2015, Petitioner saw his PCP, Dr. Suzanne Migchelbrink, M.D., for a follow-up regarding his hypercholesterolemia and mild cognitive impairment.  Ex. 11 at 1.  Dr. Migchelbrink noted Petitioner experienced:

> occasional numb or funny sensation under the balls of both feet, and sometimes cannot really feel where his feet are, other times fine. Occasional foot cramps at night…. He reports a slight change in his balance but no falls, no need for grab bars in the bathroom, and has a hand rail on his stairs at home.

*Id.*  Mr. Liberty was taking Simvastatin, Fluticasone Propionate, Aspirin, Vitamin B12, Avastin, Latanoprost, Dorzolamide, and Brimonidine Tartrate for his various health concerns.  *Id.* at 2.  Petitioner was administered a Prevnar 13 vaccine during this visit.  *Id.* at 3; Ex. 1 at 1; Ex. 2; Ex. 9 at 6, 930, 968, 1022.

On the morning of February 16, 2016, Petitioner was taken to Legacy Meridian Hospital.  Petitioner was seen by Dr. Anthony Bilotti, M.D., who noted in his initial observation that Petitioner experienced developing numbness in his right leg followed by left leg around 7am.  Ex. 9 at 14.  Petitioner informed Dr. Bilotti of a burning sensation in his right thigh followed by weakness in the right leg, which was followed by the left leg.  *Id.*

On the same day, Petitioner was seen by Dr. Paul Ash, M.D., a neurologist.  Ex. 9 at 31.  Dr. Ash observed Petitioner had "sudden onset" right to left leg paresthesia with rapidly progressive lower extremity weakness and urinary retention issues.  *Id.* at 32.  Dr. Ash's initial impressions of Petitioner's potential diagnosis included transverse myelitis ("TM") and Guillain-Barré syndrome ("GBS").  *Id.*  However, Dr. Ash noted "fast onset with preserved reflexes would be atypical for Guillian-Barre [sic]."  *Id.*  Petitioner was admitted for inpatient treatment.  *Id.*

On February 20, 2016, Petitioner began treatment for GBS with intravenous immunoglobulin ("IVIG").  Ex. 9 at 80.  Dr. Heidi Loganbill, M.D., noted:

> The presentation is most consistent with acute inflammatory demyelinating polyradiculoneuropathy (AIDP) (Guillian Barre' Syndrome) [sic]. Onset may have been before the day of admission give today's history of "concrete on feet" for weeks…. Today additional history is elicited: He has felt like "concrete" on his feet

2

for a few weeks. He fell heavily on soft ground around 3 weeks prior to admission. No recent immunizations, illness or other injuries.

*Id.*

Petitioner underwent multiple MRIs, with and without contrast, during his stay at Legacy Meridian Hospital. *See* Ex. 9 at 26-28. These MRIs revealed a myelopathy in Petitioner's lower back. *Id.* at 25. Also noted in Petitioner's medical records, "Due to the high end normal protein, NCV results and lack of reflexes he was started on IVIG for suspected Guillaine Barre [sic]. However, he did have a positive Babinski suggesting an upper motor neuron issue that would not be consistent with GBS and he did not worsen at all even before IVIG was started." *Id.*

On February 26, 2016, Petitioner was discharged from Legacy Meridian Hospital with a principal final diagnosis of myelopathy of lumbosacral region… or "myelopathy of distal thoracic cord, unknown etiology, less likely Guillain Barre syndrome". Ex. 9 at 24.

In subsequent medical records, Petitioner's medical records included both transverse myelitis and GBS in Petitioner's past medical history dated 02/2016. *Compare* Ex. 3 at 3, 23; Ex. 4 at 1; Ex. 5 at 234, Ex. 7 at 1; Ex. 8 at 4. On June 30, 2016, Petitioner was seen again by Dr. Loganbill at Oregon Neurology. Ex. 7 at 4. On this visit, Dr. Loganbill noted, "Lower extremity weakness; The differential includes lumbar myelopathy, possibly due to transverse myelitis, vs. less likely, Guillain Barre syndrome. Abnormalities on lumbar spine imaging, at the T11 level and extending down to the tip of the conus medullaris, makes the diagnosis of Guillain Barre less likely." *Id.* at 6.

Dr. Migchelbrink saw Petitioner on August 5, 2016, where she noted, "I visited him in the hospital in February when he was hospitalized with acute bilateral lower extremity weakness. At that time, the suspected [diagnosis] was GBS, however now it is felt that the more likely diagnosis is transverse myelitis." Ex. 3 at 23.

On April 20, 2017, Petitioner saw Dr. Greg Cost, M.D., a urologist, for a consultation. Ex. 4 at 2. Dr. Cost noted in the history of present illness section, "PT had transverse myelitis vs. Guilliam [sic] Barre 2/2016." *Id.*

In subsequent visits with Dr. Migchelbrink, her patient history for Petitioner consistently stated, "transverse myelitis (vs. Guillain-Barre syndrome)." *See* Ex. 3 at 3, 6, 11, 15, 19, 21.

No other medical records filed were pertinent to the issues to be addressed in this decision.

## II.     Procedural History

On September 17, 2018, Petitioner filed his Petition. Pet., ECF No. 1. This case was assigned to my docket on September 18, 2018. ECF No. 4. Medical records were filed on December 11, 2018, October 12, 2018, and February 26, 2019. Exs. 1-11, ECF Nos. 1, 8, 12.

3

On March 26, 2019, I held a status conference with the parties to discuss my views on Petitioner's claim. *See* Order on 3/26/2019, ECF No. 14. I informed Petitioner's counsel that the medical records submitted are inconsistent with Petitioner's affidavit with regards to the onset of his lower leg weakness. *Id.* Furthermore, the medical records highlight the onset of Petitioner's lower leg weakness as acute. *Id.* Petitioner was ordered to provide additional evidence to support the alleged onset date provided in his affidavit by April 25, 2019. *Id.*

On April 30, 2019, Petitioner filed an affidavit written by his wife, Sherry Liberty ("Mrs. Liberty"). Ex. 12, ECF No. 16. In Mrs. Liberty's affidavit, she wrote that on the date of Petitioner's hospitalization, she was glad to know Dr. Ash was on call because she knew him prior "from her work in orthopedics." Ex. 12 at 1. At the hospital, Dr. Ash asked her if Petitioner had previously talked about his feet or legs and she told him, "Around Christmas [Petitioner] had said his feet were going to sleep whenever he sat down and lately his legs seemed slightly weak at times." *Id*. Mrs. Liberty stated that she bought Petitioner lighter weight golf shoes and a new golf cart for Christmas, which he utilized in January 2016. *Id.* Pictures of the shoes and golf cart were provided, however no receipts of when those items were purchased were provided. *See* Ex. 13; *see also* Pet'r's Status Report on 5/9/2019, ECF No. 17.

On May 9, 2019, Petitioner filed a status report stating there was no other additional evidence to support Mr. and Mrs. Liberty's statements regarding onset. Pet'r's Status Report on 5/9/2019, ECF No. 17. Petitioner did cite to a case study of 47 patients that "up to 30% of all cases of TM in children had a history of vaccination mostly within 1 month of symptom onset." *Id.* at 2; Pidcock FS, et al., *Acute transverse myelitis in childhood: center-based analysis of 47 cases*. NEUROLOGY 2007; 68: 1474–1480. Petitioner also reproduced a table from medical literature regarding the onset of TM after a variety of vaccines. *Id.* at 3. This table showed onset of TM after vaccination ranging from three days to nine years. *See id.*

On June 21, 2019, I held a status conference with the parties to reiterate my concerns regarding the onset of Petitioner's symptoms. *See* Order on 6/21/2019, ECF No. 20. Petitioner's counsel requested the opportunity to consult with a neurologist on the medical feasibility of onset of TM after two months. *See id.* I granted Petitioner 45 days to file a status report addressing whether he intends to continue the prosecution of his Petition. *Id.* Petitioner missed that deadline and I granted two extensions of time. *See* non-PDF Scheduling Order on 8/8/2019; *see also* non-PDF Orders Granting Motion for Extension of Time on 8/15/2019 and 8/30/2019.

On September 10, 2019, Petitioner's counsel filed a Motion to Withdraw as Attorney of Record and a Motion for Interim Attorneys' Fees and Costs simultaneously. On September 20, 2019, Respondent filed a Response to Petitioner's Application for Interim Attorneys' Fees and Costs, stating interim fees were not appropriate at this time. ECF No. 26.

On October 17, 2019, I held a status conference with the parties to discuss Petitioner's motions. *See* Order on 10/22/2019, ECF No. 27. Petitioner's counsel stated he and Petitioner no longer agreed on how to proceed and Petitioner was seeking new counsel. *Id.* Respondent's counsel stated that she would not file a formal objection to the motion to withdraw but stated that the case was not supported by a reasonable basis, and thus interim fees were not warranted at this time. *See id.* Petitioner's counsel requested additional time to file a Reply to Respondent's

4

Response to Petitioner's Application for Interim Attorneys' Fees and Costs.  *See id.*  I granted Petitioner until October 31, 2019 to file a status report updating the Court regarding his search for new counsel and indicating how he would like to proceed and to file a Reply to Respondent's Response to Petitioner's Application for Interim Attorneys' Fees and Costs.  *Id.*  I issued two subsequent orders for Petitioner's overdue status report and Reply on November 1, 2019 and November 22, 2019.  *See* non-PDF Scheduling Orders on 11/1/2019 and 11/22/2019.

On November 25, 2019, Petitioner filed a Motion for a Decision Dismissing His Petition.  ECF No. 28.  On the same day, I issued a Decision Dismissing Case for Insufficient Proof.  *See Liberty v. Sec'y of Health & Human Servs.*, No. 18-1419, 2019 U.S. Claims LEXIS 2193 (Fed. Cl. Spec. Mstr. Nov. 25, 2019).  On December 10, 2019, Petitioner filed a Motion to Strike the September 10, 2019 Motion for Interim Attorneys' Fees and Cost and Motion to Withdraw as Attorney of Record.  ECF No. 33.  I granted that motion on December 11, 2019.  *See* non-PDF Order Granting Motion to Strike on 12/11/2019.

On December 30, 2019, Petitioner filed an application for final attorneys' fees and costs, totaling $25,968.61.  Fees App. at 12, ECF No. 35.  On January 9, 2020, Petitioner filed a supplement to his Motion for Attorneys' Fees and Costs[3], which included missing cost documentation.  Ex. B, ECF No. 36.

On January 10, 2020, Respondent filed a Response to Petitioner's Motion for Attorney's Fees and Costs, stating "Petitioner has failed to establish a reasonable basis for this claim, and is thus not entitled to an award of attorneys' fees and costs."  Fees Resp. at 5, ECF No. 37.

On January 17, 2020, Petitioner filed a Reply to Respondent's Response, requesting that I find the petition was supported by reasonable basis and award attorneys' fees and costs.  Fees Reply at 5, ECF No. 39.  On January 28, 2020, Petitioner filed an additional supplement[4] to his application for attorneys' fees and costs, which included a request for increased hourly rate for attorney Courtney Van Cott for 2020 and additional fees for the drafting of Petitioner's Reply Brief, totaling $3,137.09[5].  Second Supplement to Fees App. at 1-2, ECF No. 40.  With this additional filing, Petitioner's applications for attorneys' fees and costs total $29,105.70[6].

---

[3] Docketed as "Supplemental Motion for Attorney Fees and Costs (Final)" but will be referred to as First Supplement to Fees App. in this Decision.

[4] Docketed as "Supplemental Brief re: Motion for Attorney Fee" but will be referred to as Second Supplement to Fees App. in this Decision.

[5] It should be noted that the supporting documentation for additional fees and costs was labelled as Exhibit B, although in the First Supplement to Fees App. (ECF No. 36), the accompanying exhibit was also labeled as Exhibit B. For the sake of clarity, the exhibit in the Second Supplement to Fees App. (ECF NO. 40) will be referred to as Exhibit C.

[6] In the Second Supplement to Fees App., Petitioner requested a total of $29,106.51.  *See* Second Supplement to Fees App. at 2.  However, Petitioner's Exhibit C reflects a total of $29,105.70, which is comprised of all documented attorney billed hours and costs.  It is unknown where the amount of $29,106.51 originates from.

**III.     Parties' Arguments**

Respondent argued that Petitioner has failed to establish a reasonable basis for his claim and is not entitled to an award of attorneys' fees and costs. Fees Resp. at 1. Respondent pointed to § 15(e)(1) of the Vaccine Act, which states that a special master is permitted to make a discretionary award of attorneys' fees and costs to an unsuccessful petitioner "if the special master or court determines that the petition was brought in good faith and there was a reasonable basis for the claim for which the petition was brought." *Id.* at 5; *see also* 42 U.S.C. § 300aa-15(e)(1). Citing the Federal Circuit's decision in *Perreira*, Respondent stated that in a reasonable basis inquiry, "a court should look not at the likelihood of success, but instead assess the feasibility of the claim, and [P]etitioner must offer more than an unsupported assertion that a vaccine caused an injury." *Id.*; citing *Perreira v. Sec'y of Health & Human Servs.*, 33 F.3d 1375, 1377 (Fed. Cir. 1994); *McKellar v. Sec'y of Health & Human Servs.*, 101 Fed. Cl. at 303-04 (2011); *Cortez v. Sec'y of Health & Human Servs.*, No. 09-176, 2014 WL 1604002, at *5 (Fed. Cl. Spec. Mstr. Mar. 26, 2014). Respondent further stated that the evaluation of whether there is a reasonable basis for the claim must focus on whether there is evidentiary support set forth in the petition. *Id*. at 6; citing *Simmons v Sec'y of Health & Human Servs.,* 875 F.3d 632, 636 (Fed. Cir. 2017).

Respondent argued that Petitioner failed to establish reasonable basis for this claim because medical records reflect that Petitioner developed an acute neurological condition in mid-February 2016, more than ten weeks after the allegedly causal vaccination on December 3, 2015. Fees Resp. at 6. Furthermore, Respondent argued that "the record is devoid of reliable evidence that pneumococcal vaccine can cause GBS, transverse myelitis, or any other demyelinating injury, and certainly not in the 75-day time fame [sic] in this case." *Id.* Respondent identified a case in which Special Master Dorsey concluded that a 74-day onset period between a flu vaccine and TM is "medically and scientifically unacceptable" and another case in which "special masters have never gone beyond a two-month (meaning eight week) interval in holding hat [sic] a vaccination caused a demyelinating illness." *Id.* at 6-7; citing *Pearson v. Sec'y of Health & Human Servs.*, No. 16-9, 2019 WL 3852633, at *16 (Fed. C. Spec. Mstr. Jul. 31, 2019) and *Barone v. Sec'y of Health & Human Servs.*, No. 11-707V, 2014 WL 68234557, at *13 (Fed. Cl. Spec. Mstr. Nov. 12, 2014).

Respondent refuted Petitioner's diagnosis of transverse myelitis, as "far from established" based on the provided medical records, and stated that a decision finding entitlement in a case involving the Prevnar vaccine and TM is insufficient for reasonable basis. Fees Resp. at 7. The facts of that case (onset within eight days of vaccination and expert opinion supporting vaccine causation) are "inapposite" to this case. *Id.* Additionally, Respondent argued the affidavits provided by Petitioner and his wife, are inconsistent and do not establish reasonable basis. *Id.*

In support of his claim that the Petition possessed a reasonable basis, Petitioner cited to *Fant v. Sec'y of Health & Human Servs*, No. 02-1419V, 2007 WL 5161767 (Fed. Cl. Spec. Mstr. Mar. 9, 2007). Fees Reply at 3. In that case, the Special Master found sufficient evidence in the record to conclude that the Prevnar vaccine caused Petitioner's transverse myelitis. Petitioner further argued that there is evidence in the medical records that onset of Petitioner's symptoms of leg weakness began before he was hospitalized, as described in the medical history taken by Dr.

6

Loganbill after Petitioner's hospitalization.  *See* Fees Reply at 2; Ex. 9 at 80.  Finally, Petitioner cited to the Agmon-Levin article as further support for reasonable basis.  Fees Reply at 3-5.

## IV. Legal Standard

Under the Vaccine Act, an award of reasonable attorneys' fees and costs is presumed where a petition for compensation is granted.  Where compensation is denied, or a petition is dismissed, as it was in this case, the special master must determine whether the petition was brought in good faith and whether the claim had a reasonable basis. § 15(e)(1).

### A. Good Faith

The good faith requirement is met through a subjective inquiry. *Di Roma v. Sec'y of Health & Human Servs.*, No. 90-3277V, 1993 WL 496981, at *1 (Fed. Cl. Spec. Mstr. Nov. 18, 1993).  Such a requirement is a "subjective standard that focuses upon whether [P]etitioner honestly believed he had a legitimate claim for compensation." *Turner v. Sec'y of Health & Human Servs.*, No. 99-544V, 2007 WL 4410030, at *5 (Fed. Cl. Spec. Mstr. Nov. 30, 2007).  Without evidence of bad faith, "petitioners are entitled to a presumption of good faith." *Grice v. Sec'y of Health & Human Servs.*, 36 Fed. Cl. 114, 121 (1996).  Thus, so long as Petitioner had an honest belief that his claim could succeed, the good faith requirement is satisfied.  *See Riley v. Sec'y of Health & Human Servs.*, No. 09-276V, 2011 WL 2036976, at *2 (Fed. Cl. Spec. Mstr. Apr. 29, 2011) (citing *Di Roma*, 1993 WL 496981, at *1); *Turner*, 2007 WL 4410030, at *5.

### B. Reasonable Basis

Unlike the good-faith inquiry, an analysis of reasonable basis requires more than just a petitioner's belief in his claim.  *Turner*, 2007 WL 4410030, at *6-7.  Instead, the claim must at least be supported by objective evidence -- medical records or medical opinion. *Sharp-Roundtree v. Sec'y of Health & Human Servs.*, No. 14-804V, 2015 WL 12600336, at *3 (Fed. Cl. Spec. Mstr. Nov. 3, 2015).

While the statute does not define the quantum of proof needed to establish reasonable basis, it is "something less than the preponderant evidence ultimately required to prevail on one's vaccine-injury claim." *Chuisano v. United States,* 116 Fed. Cl. 276, 283 (2014).  The Court of Federal Claims affirmed in *Chuisano* that "[a]t the most basic level, a petitioner who submits no evidence would not be found to have reasonable basis…." *Id.* at 286.  The Court in *Chuisano* found that a petition which relies on temporal proximity and a petitioner's affidavit is not sufficient to establish reasonable basis. *Id.* at 290.  *See also Turpin v. Sec'y Health & Human Servs.*, No. 99-564V, 2005 WL 1026714, *2 (Fed. Cl. Spec. Mstr. Feb. 10, 2005) (finding no reasonable basis when petitioner submitted an affidavit and no other records); *Brown v. Sec'y Health & Human Servs.*, No. 99-539V, 2005 WL 1026713, *2 (Fed. Cl. Spec. Mstr. Mar. 11, 2005) (finding no reasonable basis when petitioner presented only e-mails between her and her attorney).  The Federal Circuit has affirmed that "more than a mere scintilla but less than a preponderance of proof could provide sufficient grounds for a special master to find reasonable basis." *Cottingham v. Sec'y of Health & Human Servs.*, No. 2019-1596, 2020 WL 4810095 at *5 (Fed. Cir. Aug. 19,

7

2020) (finding Petitioner submitted objective evidence supporting causation when she submitted medical records and a vaccine package insert).

Temporal proximity between vaccination and onset of symptoms is a necessary component in establishing causation in non-Table cases, but without more, temporal proximity alone "fails to establish a reasonable basis for a vaccine claim." *Chuisano*, 116 Fed. Cl. at 291.

The Federal Circuit has stated that reasonable basis "is an objective inquiry" and concluded that "counsel may not use [an] impending statute of limitations deadline to establish a reasonable basis for [appellant's] claim." *Simmons v. Sec'y of Health & Human Servs.*, 875 F.3d 632, 636 (Fed. Cir. 2017). Further, an impending statute of limitations should not even be one of several factors the special master considers in her reasonable basis analysis. "[T]he Federal Circuit forbade, altogether, the consideration of statutory limitations deadlines—and all conduct of counsel—in determining whether there was a reasonable basis for a claim." *Amankwaa v. Sec'y of Health & Human Servs.*, 138 Fed. Cl. 282, 289 (2018). Objective medical evidence, including medical records, can constitute evidence of causation supporting a reasonable basis. *Cottingham*, 2020 WL 4810095 at *7.

"[I]n deciding reasonable basis the [s]pecial [m]aster needs to focus on the requirements for a petition under the Vaccine Act to determine if the elements have been asserted with sufficient evidence to make a feasible claim for recovery." *Santacroce v. Sec'y of Health & Human Servs.*, No. 15-555V, 2018 WL 405121, at *7 (Fed. Cl. Jan. 5, 2018). Special masters cannot award compensation "based on the claims of petitioner alone, unsubstantiated by medical records or by medical opinion." 42 U.S.C. § 300aa-13(a)(1). Special masters and judges of the Court of Federal Claims have interpreted this provision to mean that petitioners must submit medical records or expert medical opinion in support of causation-in-fact claims. *See Waterman v. Sec'y of Health & Human Servs.,* 123 Fed. Cl. 564, 574 (2015) (citing *Dickerson v. Sec'y of Health & Human Servs.*, 35 Fed. Cl. 593, 599 (1996) (stating that medical opinion evidence is required to support an on-Table theory where medical records fail to establish a Table injury)).

When determining if a reasonable basis exists, many special masters and judges consider a myriad of factors. It is appropriate to analyze reasonable basis through a totality of the circumstances test that focuses on objective evidence. *Cottingham,* 2020 WL 4810095 at *4. The factors to be considered may include "the factual basis of the claim, the medical and scientific support for the claim, the novelty of the vaccine, and the novelty of the theory of causation." *Amankwaa*, 138 Fed. Cl. at 289. This approach allows the special master to look at each application for attorneys' fees and costs on a case-by-case basis. *Hamrick v. Sec'y of Health & Human Servs.*, No. 99-683V, 2007 WL 4793152, at *4 (Fed. Cl. Spec. Mstr. Nov. 19, 2007).

### C. Attorneys' Fees and Costs

The Vaccine Act permits reimbursement of "reasonable" attorneys' fees and costs. § 15(e)(1). Special masters have "wide latitude in determining the reasonableness of both attorneys' fees and costs." *Hines v. Sec'y of Health & Human Servs.*, 22 Cl. Ct. 750, 753 (1991). The Federal Circuit has endorsed the use of the lodestar approach, in which a court first determines "an initial estimate of a reasonable attorneys' fee by 'multiplying the number of hours reasonably expended

on the litigation times a reasonable hourly rate.'" *Avera v. Sec'y of Health & Human Servs.*, 515 F.3d 1343, 1347-48 (quoting *Blum v. Stenson*, 465 U.S. 886, 888 (1984)). The court may then make an upward or downward departure from the initial calculation based on other specific findings. *Id*. at 1348. Although not explicitly stated in the statute, attorneys' costs are also subject to a reasonableness requirement. *See Perreira*, 27 Fed. Cl. 29 at 34.

Petitioner bears the burden of establishing that the rates charged, hours expended, and costs incurred are reasonable. *Wasson v. Sec'y of Health & Human Servs.*, 24 Cl. Ct. 482, 484 (1993). However, Special masters may reduce awards *sua sponte*, independent of enumerated objections from the respondent. *Sabella v. Sec'y of Health & Human Servs.*, 86 Fed. Cl. 201, 208-09 (Fed. Cl. 2009); *Savin v. Sec'y of Health & Human Servs.*, 85 Fed. Cl. 313, 318 (Fed. Cl. 2008), *aff'd* No. 99-573V, 2008 WL 2066611 (Fed. Cl. Spec. Mstr. Apr. 22, 2008). Special masters may look to their experience and judgment to reduce an award of fees and costs to a level they find reasonable for the work performed. *Saxton v. Sec'y of Health & Human Servs.*, 3 F.3d 1517, 1521 (Fed. Cl. 1993).

### V. Discussion

#### A. Good Faith

Petitioners are entitled to a presumption of good faith. *See Grice*, 36 Fed. Cl. 114 at 121. Respondent has stated that they are not contesting good faith in this matter. *See* Fees Resp. at 5, n. 4. Based on my own review of the case, I find that Petitioner acted in good faith when filing this Petition.

#### B. Reasonable Basis

As noted above, the standard for establishing reasonable basis is much lower than that required to prevail on a vaccine-injury claim. *Chuisano,* 116 Fed. Cl. 276 at 287. However, Petitioner is still required to provide *some* evidence of a reasonable expectation of establishing causation. *Bekiaris*, 2018 WL 4908000, at *6. As discussed in more detail below, I find that the petition is supported by a reasonable basis.

##### i. Transverse Myelitis Diagnosis

Petitioner was given a preliminary diagnosis of GBS upon his hospitalization at Legacy Meridian Hospital and was treated for GBS with IVIG. At this time however, his medical records noted, "he did have a positive Babinski suggesting an upper neuron issue that would not be consistent with GBS and he did not worsen at all even before IVIG was started." Ex. 9 at 25. Petitioner was released with a diagnosis of "myelopathy of lumbrosacral region". *Id*. at 24.

On June 30, 2016, Petitioner had a follow up with Dr. Loganbill (a neurologist). The record states as follows: "The differential includes lumbar myelopathy, possibly due to transverse myelitis, vs. less likely, Guillain Barre syndrome. Abnormalities on lumbar spine imaging, at the T11 level and extending down to the tip of the conus medullaris, makes the diagnosis of Guillain

9

Barre less likely." Ex. 7 at 6. This record goes on to state, "[t]he diagnosis of transverse myelitis was discussed with the patient and his family at length." *Id.*

This diagnosis was reflected in subsequent medical records by two other medical providers, Petitioner's PCP, Dr. Migchelbrink and Dr. Cost, a urologist. *See* Ex. 3 at 3, 6, 11, 15, 19, 21; Ex. 4 at 2. While these medical records do not establish a clear-cut diagnosis, they do constitute some evidence that Petitioner had a diagnosis of transverse myelitis.

### ii. Evidence of Onset

While the majority of the medical records in this case indicate that the onset of Petitioner's symptoms took place the day he went to the hospital (February 16, 2016), there is *some evidence* to suggest an earlier onset. On February 20, 2016, Dr. Loganbill noted that Petitioner "has felt like 'concrete' on his feet for a few weeks. He fell heavily on soft ground around 3 weeks prior to admission." Ex. 9 at 80. Three weeks prior to admission was January 26, 2016, or six weeks and two days after vaccination. While I would likely not have found this to have been the date of onset by preponderant evidence had this case gone to a hearing, that it not the standard I must apply in determining whether a reasonable basis existed to file the petition. The Federal Circuit recently stated in *Cottingham*, "more than a mere scintilla but less than a preponderance of proof could provide sufficient grounds for a special master to find reasonable basis." *Cottingham*, 2020 WL 4810095 at *5. This notation in the medical record constitutes some evidence of onset in a temporally appropriate window.

### iii. Medical Literature Regarding Transverse Myelitis Post-Vaccination

Petitioner filed one piece of medical literature in support of his petition. *See* Agmon-Levin et al., *Transverse myelitis and vaccines: a multi analysis*, 18 LUPUS 1198-1204 (2009) (filed as Ex. 14) (hereinafter "Agmon-Levin"). Of note to this case, the article states "The pathogenesis of transverse myelitis is mostly of an autoimmune nature, triggered by various environmental factors, including vaccination." Agmon-Levin at 1198. The article goes on to note that "in most of these reported cases, the temporal association was between several days and 3 months." *Id.*

I find that Petitioner's medical records and the Agmon-Levin article provide *some evidence* that 1) Petitioner was correctly diagnosed with transverse myelitis; 2) Petitioner experienced onset of his symptoms of transverse myelitis approximately six weeks after vaccination; and 3) vaccination can cause transverse myelitis during this window of time.

The totality of the evidence outlined above, in combination with the reduced standard of proof required for establishing reasonable basis was sufficient to provide Petitioner with a reasonable basis to file this Petition.

### C. Attorneys' Fees

Petitioner requests a total of $27,991.00 in attorneys' fees. *See* Fees App. at 11; Second Supplement to Fees App.; Ex. A; Ex. C.

10

### i. Reasonable Hourly Rate

A reasonable hourly rate is defined as the rate "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Avera*, 515 F.3d at 1348 (quoting *Blum*, 465 U.S. at 896 n.11). In general, this rate is based on "the forum rate for the District of Columbia" rather than "the rate in the geographic area of the practice of [P]etitioner's attorney." *Rodriguez v. Sec'y of Health & Human Servs.*, 632 F.3d 1381, 1384 (Fed. Cir. 2011) (citing *Avera*, 515 F. 3d at 1349).

*McCulloch* provides the framework for determining the appropriate compensation for attorneys' fees based upon the attorneys' experience. *See McCulloch v. Sec'y of Health & Human Servs.*, No. 09–293V, 2015 WL 5634323 (Fed. Cl. Spec. Mstr. Sept. 1, 2015). The Office of Special Masters has accepted the decision in *McCulloch* and has issued a Fee Schedule for subsequent years.[7]

Petitioner's counsel, Mr. Andrew Downing requests to be compensated at a rate of $385.00 per hour. Fees App., Ex. A at 23-24; Second Supplement to Fees App., Ex. C at 2. This rate is consistent with *McCulloch* and with what he has been previously awarded in the Program. *See, e.g.*, *Olschansky v. Sec'y of Health & Human Servs.*, No. 17-1096, 2020 WL 1027681 at *2 (Fed. Cl. Spec. Mstr. Feb. 21, 2020); *Butler v. Sec'y of Health & Human Servs.*, No. 16-1027V, 2019 WL 1716073, at *2 (Fed. Cl. Spec. Mstr. Mar. 20, 2019); *Carey on behalf of C.C. v. Sec'y of Health & Human Servs.*, No. 16-828V, 2018 WL 1559805, at *6 (Fed. Cl. Spec. Mstr. Feb. 26, 2018); *Bales on behalf of J.B.A. v. Sec'y of Health & Human Servs.*, No. 15-882V, 2017 WL 2243094, at *3-4 (Fed. Cl. Spec. Mstr. Apr. 26, 2017). In Petitioner's Second Supplement, Petitioner requests a rate increase for Ms. Courtney Van Cott from $205.00 to $275.00 for her work in 2020. Second Supp. to Fees App. at 1, ECF No. 40. Ms. Van Cott graduated from the Sandra Day O'Connor College of Law at Arizona State University in 2014 and began working with Mr. Downing on vaccine injury matters in 2015. *Id.* at 2. Her new requested rate is consistent with *McCulloch* and with the Attorneys' Forum Hourly Rate Fee Schedule, thus I grant this request. Ms. Van Cott's $205.00 hourly rate is also consistent with what has been she has been previously awarded in the Program. *See, e.g.*, *Olschansky.*, 2020 WL 1027681 at *2; *Butler*, 2019 WL 1716073, at *2; *Carey on behalf of C.C.*, 2018 WL 1559805, at *6; *Bales on behalf of J.B.A.*, 2017 WL 2243094, at *3-4. Petitioner also requests an hourly rate of $135.00 for work done by paralegals from 2018-2020.

---

[7] The 2015–2016 Fee Schedule can be accessed at:
http://www.cofc.uscourts.gov/sites/default/files/Attorneys-Forum-Rate-Fee-Schedule2015-2016.pdf.
The 2017 Fee Schedule can be accessed at:
http://www.cofc.uscourts.gov/sites/default/files/Attorneys-Forum-Rate-Fee-Schedule-2017.pdf.
The 2018 Fee Schedule can be accessed at:
http://www.cofc.uscourts.gov/sites/default/files/Attorneys%27%20Forum%20Rate%20Fee%20Schedule%202018.pdf.
The 2019 Fee Schedule can be accessed at:
http://www.cofc.uscourts.gov/sites/default/files/Attorneys%27%20Forum%20Rate%20Fee%20Schedule%202019.pdf.
The hourly rates contained within the schedules are updated from the decision in McCulloch, 2015 WL 5634323.

These rates are consistent with such work previously awarded in the Program. Accordingly, I find the requested rates reasonable and that no adjustment is warranted.

### ii.  Hours Reasonably Expended

Attorneys' fees are awarded for the "number of hours reasonably expended on the litigation." *Avera*, 515 F.3d at 1348.  Ultimately, it is "well within the Special Master's discretion to reduce the hours to a number that, in [her] experience and judgment, [is] reasonable for the work done." *Saxton ex rel. Saxton v. Sec'y of Health & Human Servs.*, 3 F.3d 1517, 1522 (Fed. Cir. 1993).  In exercising that discretion, special masters may reduce the number of hours submitted by a percentage of the amount charged.  *See Broekelschen v. Sec'y of Health & Human Servs.*, 102 Fed. Cl. 719, 728-29 (2011) (affirming the special master's reduction of attorney and paralegal hours); *Guy v. Sec'y of Health & Human Servs.*, 38 Fed. Cl. 403, 406 (1997) (affirming the special master's reduction of attorney and paralegal hours).  While attorneys may be compensated for non-attorney-level work, the rate must be comparable to what would be paid for a paralegal or secretary.  *See O'Neill v. Sec'y of Health & Human Servs.*, No. 08–243V, 2015 WL 2399211, at *9 (Fed. Cl. Spec. Mstr. Apr. 28, 2015).  Clerical and secretarial tasks should not be billed at all, regardless of who performs them.  *See, e.g., McCulloch*, 2015 WL 5634323, at *26.

Petitioner's counsel have provided a breakdown of hours billed and costs incurred.  Fees App., Ex. A.  I find the hours to be largely reasonable, however I find a reduction is appropriate for excessive time billed by Ms. Danielle P. Avery for administrative tasks, such as receiving and reviewing ECF notifications for filings and processing payment for medical records.  As such, I deduct $405.00, totaling 3 hours for entries made on 3/2/2018 (0.2 x 2), 3/15/18 (0.2), 4/11/2018 (0.2), 6/21/2018 (0.2), 7/2/2018 (0.2), 9/18/2018 (0.1), 10/15/2018 (0.1 x 2), 12/11/2018 (0.1), 12/12/2018 (0.1), 2/26/2016 (0.1 x 2), 4/25/2019 (0.1), 4/30/2019 (0.1), 5/1/2019 (0.1), 5/9/2019 (0.1), 6/3/2019 (0.1), 8/14/2019 (0.1), 8/29/2019 (0.1), 11/25/2019 (0.1 x 2), 11/26/2019 (0.1), 12/10/2019 (0.1).

Total attorneys' fees to be awarded: $**27,586.00**

### D.  Reasonable Costs

Petitioner requests a total of $1,114.70 in costs, which includes obtaining medical records, postage costs, the Court's filing fee, and legal research costs.  Fees App., Ex. A. at 22-23; First Supplement to Fees App., Ex. B; Second Supplement to Fees App., Ex. C at 3.  I have reviewed the supporting documentation and find this request to be reasonable.  Accordingly, I award costs in full.

Total costs to be awarded: **$1,114.70**

### VI.  Conclusion

Accordingly, in the exercise of the discretion afforded to me in determining the propriety of fee and cost awards, and based on the foregoing, I **GRANT IN PART** Petitioner's application, as follows:

A lump sum in the amount of **$28,700.70**, representing reimbursement of Petitioner's attorneys' fees and costs in the form of a check jointly payable to Petitioner and his attorney, Andrew Downing.

In the absence of a motion for review filed pursuant to RCFC Appendix B, the Clerk of Court **SHALL ENTER JUDGMENT** in accordance with this decision.[8]

**IT IS SO ORDERED.**

<u>s/ Katherine E. Oler</u>
Katherine E. Oler
Special Master

---

[8] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by each party filing a notice renouncing the right to seek review.